BRIGHAM et al. v. KENYON et al.

(Circuit Court, D. Washington, N. D.    August 8, 1896.)

No. 525.

DEVISE TO ALIEN—VALIDITY.
    Const. Wash. art. 2, § 33, prohibiting "the ownership of lands by aliens * * * except where acquired by inheritance, under mortgage or in good faith in the ordinary course of justice in the collection of debts," and providing that "all conveyances of lands hereafter made to any alien directly, or in trust for such alien, shall be void," does not render a will void because it contains an item devising land to an alien.

Bill by Mary Ann Brigham and Cynthia Perry against Benjamin Kenyon and others.

Lindsay, Arthur & King and G. W. Delamater, for plaintiffs.
Struve, Allen, Hughes & McMicken, for defendants.

HANFORD, District Judge.   The bill of complaint alleges owner-
ship by one J. Gardner Kenyon, deceased, of real estate in the state of
Washington, and a will made by him, devising real estate to Benja-
min Kenyon, who is alleged to be an alien and a subject of Great
Britain.   The complainants, as heirs of said J. Gardner Kenyon,
seek a construction of the will, and a decree of the court determining
that the heirs at law are entitled to the estate as if J. Gardner Ken-
yon had died intestate, and base their contention on section 33 of
article 2 of the constitution of the state of Washington, which reads
as follows:

"Sec. 33. The ownership of lands by aliens, other than those who in good
faith have declared their intention to become citizens of the United States,
is prohibited in this state, except where acquired by inheritance, under mort-
gage or in good faith in the ordinary course of justice in the collection of
debts; and all conveyances of lands hereafter made to any alien directly,
or in trust for such alien, shall be void: provided, that the provisions of this
section shall not apply to lands containing valuable deposits of minerals,
metals, iron, coal or fire clay, and the necessary land for mills and machinery
to be used in the development thereof and the manufacture of the products
therefrom."

The defendants have demurred to the bill, and they contend that
a construction must be given to the above section of the constitution
to give effect to the word "inheritance" so as to include the succes-
sion to ownership of real estate of deceased persons by devise, as
well as by operation of law in cases of persons dying intestate, and
that the word "void" must be limited in its meaning so that instru-
ments conveying real estate are only made noneffective as against
proceedings lawfully instituted by the state for the purpose of de-
priving alien grantees of estates thereby conveyed, or, to state the
matter more concisely, the word "voidable" should be substituted for
"void," or else the section must be given a literal construction
throughout, and effect given to every word therein, as having been
selected to accurately signify what it expresses according to the defi-
nitions given by lexicographers, and that the word "conveyances"
should therefore be restricted to apply only to instruments in writ-
ing whereby the title to land is transferred directly from one living
person to another.

In 1887, congress passed an act containing the following provisions:

"It shall be unlawful for any person or persons not citizens of the United
States, or who have not lawfully declared their intention to become such citi-
zens, * * * to hereafter acquire, hold, own real estate so hereafter ac-
quired, or any interest therein, in any of the territories of the United States
or in the District of Columbia. except such as may be acquired by inheritance
or in good faith in the ordinary course of justice in the collection of debts
heretofore created. * * *

"Sec. 4. That all property acquired, held, or owned in violation of the pro-
visions of this act shall be forfeited to the United States, and it shall be the
duty of the attorney general to enforce every such forfeiture by bill in equity
or other proper process."

24 Stat. 476.

At the time of the adoption of our state constitution, in 1889, the
following statute, in regard to the equal rights of aliens with citizens
in acquiring real estate, was in force:

"Sec. 2955. Any alien, except such as by the laws of the United States are incapable of becoming citizens of the United States, may acquire and hold lands, or any right thereto or interest therein, by purchase, devise, or descent, and he may convey, mortgage and devise the same, and if he shall die intestate, the same shall descend to his heirs; and in all cases such lands shall be held, conveyed, mortgaged, or devised, or shall descend, in like manner and with like effect as if such alien were a citizen of this state or of the United States." 1 Hill's Code, p. 1015.

And the following statute in regard to wills was in force:

"Sec. 1458. Every person who shall have attained the age of majority, of sound mind, may by last will devise all his or her estate, real and personal."

It will be observed by reference to the act of congress above quoted that it is one declaring the policy of the United States, and in no sense one for the territory of Washington. Nothing in that act contravenes any policy of the territories, nor is it contemplated that the territories shall in any manner be instrumental in the vindication of the policy. Congress declares the acquiring, holding, or owning of lands by an alien to be unlawful. While it, in every form of the acquirement, holding, or owning, denounces the act as an unlawful one, it recognizes the ability of the forbidden person to do the unlawful act, and reserves to itself, by the fourth section, the right of vindicating the law, and inflicting upon the alien the consequences of his unlawful act in acquiring or owning the land by forfeiting the same to the United States; so that, so far as the law stood up to the time of the adoption of the constitution, the territory itself and its citizens were in no condition to complain of any violation of that act, because it was the sole prerogative of the United States. It will be seen, on the other hand, that the legislature of the territory, so far as it was concerned, expressly recognized and provided for the rights of ownership of real estate in aliens in every respect as in citizens of the territory, measuring those of the alien by those of the citizen. The law in force also gave equal right of devising real estate by will to the citizen and alien, with the same unrestricted right of naming devisees, whether aliens or citizens.

It is difficult to determine what, if any, definite policy, was intended by the framers of the constitution in adopting section 33 of article 2, above quoted. The policy of the common law, and of the states of the American Union adopting the common law,—that allegiance and inheritance should go together,—has been entirely abrogated, because no restriction is placed on aliens acquiring land through inheritance. An examination of this section of the constitution plainly discloses that the incapacity of alienage at common law is removed, and that in all respects the alien heir stands upon a perfect equality with the citizen heir of like degree. First, the alien is expressly authorized and empowered to become the owner of real estate in Washington under mortgage, to as full an extent as he may desire. Second, he is permitted, through judicial process in the collection of debts, to become the purchaser and owner of real estate to the same extent as a citizen. Third, no restriction is placed upon his ownership of lands having deposits of minerals, metals, iron, coal, or fire clay, and whatever lands may be necessary for mills and machinery to be used in the development thereof, and the manu-

facture of products therefrom. Thus, it is seen the alien is by constitutional guaranty assured title to lands as a mortgagee, judgment creditor, or owner to any extent of lands having deposits of various minerals, or lands necessary for their manufacture. Every attribute of ownership and every method of acquirement of ownership are guarantied to the alien. It is clearly demonstrated by this provision of the constitution that he is not a person incapacitated, but, on the contrary, is endowed with every capacity of ownership. In no place does the constitution declare him civilly dead. In no place does it deal with him as a person lacking capacity to take in every one of the methods for the acquirement of property known to the law.

I cannot presume to state or understand all that the framers of our constitution may have intended by the provision above quoted, but this much is reasonably plain: that it was intended to prevent general traffic in real estate by aliens, in the ordinary way of buying and selling, and transferring titles by deeds. And, although there may be evil consequences, I do not feel justified in making an assertion that the method of prohibiting such traffic, by making all deeds to alien purchasers absolutely void, is more radical than our constitution makers intended. But it is not plain that anything more was intended than to prohibit traffic, and the reasons for giving to the word "void" its accurate and literal significance are not more cogent than may be suggested for treating the word "conveyances" in the same way. The definition of the word "conveyance" is given in the dictionaries as follows:

"An instrument in writing by which property, or the title to property, is conveyed or transmitted from one person to another." Webst. Dict.

"In the narrower sense of the word, 'conveyance' signifies the instrument employed to effectuate an ordinary purchase of freehold land (e. g. the modern deed), as opposed to settlements, wills, leases, partitions," etc. 1 Rap. & L. Law Dict. p. 290.

It is much safer for the courts to regard every word in the constitution as an accurate and precise expression of the sovereign will of the people, and as mandatory, than to assume any latitude whatever, in giving a meaning, by construction or interpretation, consonant and varying with the different ideas of different judges. I hold, therefore, that effect must be given to the constitutional provision according to the accurate and technical definition of all the words used. This brings me to the conclusion that a will otherwise valid, in this state, is not, by reason of the above-quoted section of the constitution, rendered void by an item therein devising land to an alien. It would certainly be a most arbitrary rule which would nullify a will in its entirety for such a cause, and it would be very inconsistent to so construe the constitution as to hold such a will to be void for one purpose, and valid as to every other. It may be the future policy of the state to claim a forfeiture of lands devised to aliens, or it may give the same to the heirs of the testators, notwithstanding the will; but, until the legislature shall make provision for such cases, the heirs have, in my opinion, no such right to the lands as to entitle them to ask a court of equity to set aside the will. Demurrer sustained.